**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ARTHUR M.,[1] | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | **No. 25-1394** |
| | : | |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| *Defendant.* | : | |

**MEMORANDUM OPINION**

**HON. JOSÉ RAÚL ARTEAGA**                                          **April 16, 2026**
**United States Magistrate Judge[2]**

The Commissioner of the Social Security Administration, through an Administrative Law Judge ("ALJ"), determined that Arthur M. was not disabled and denied his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 23 U.S.C. §§ 401-434. Arthur M. seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in her determination that he was not disabled. (ECF 12 at 2.)  He asks the Court to reverse the Appeals Counsel's decision. (ECF 12 at 9.)  The Commissioner responds that

---

[1] Arthur M. is referred to solely by his first name and last initial in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited Nov. 18, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 7.)

substantial evidence supports the ALJ's decision that Arthur M. is not entitled to DIB. (ECF 13 at 1.)   After careful review of the record, Arthur M.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Arthur M., a former burial-needs salesperson, applied for DIB on August 8, 2022, alleging a May 1, 2022 disability onset date.  (*See* ECF 1; Tr. 28, 179.)  He was 42 years old on the alleged onset date: a "younger person" less limited in his ability to adjust to other work. (Tr. 179.) *See* 20 C.F.R. § 404.1563(c).  Arthur M. claimed benefits based on alleged impairments including disorders of the spine and right knee, and obesity.  (Tr. 16.)  He also presented diagnoses including sleep apnea, esophageal reflux, hypothyroidism due to acquired atrophy of the thyroid, rash and nonspecific ski eruption, tinea pedis of both feet, vitamin D deficiency, and moderate mixed hyperlipidemia not requiring statin therapy.  (*Id.*)  In addition, Arthur M. presented medically determinable mental impairments of anxiety disorder and depressive disorder. (Tr. 17.)

Arthur M.'s claim for benefits was initially denied and denied again on reconsideration.  (Tr. 82, 92.)  So, he requested a hearing before an ALJ, arguing that the prior denials of his applications for benefits—disability-worker or child—failed to address the full extent of the limitations he experienced due to his alleged severe impairments, and he wanted an opportunity to explain how they prevented him from working and restricted his activities. (Tr. 93.)  Arthur M. agreed to a hearing via telephone which was held on October 11, 2023, before ALJ Jennifer Lash. (Tr. 34, 132-133.)

Represented by counsel, Arthur M. testified along with impartial Vocational Expert ("VE"), James Rossi. (*Id.*)

The ALJ determined that Arthur M.'s disorders of the spine and right knee and his obesity were severe impairments that significantly limited his ability to perform basic work activities. (Tr. 16.) She determined that his other diagnoses were non-severe, including his mental impairments, as they imposed no more than a minimal degree of limitation on his ability to perform work-related activities. (Tr. 16-19.) According to the ALJ, Arthur M. has only a mild limitation in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing himself. (Tr. 17, 18). While the overall medical evidence presented and consideration of his severe and non-severe impairments support a conclusion that Arthur M. has limiting symptoms, the ALJ determined that these symptoms are not disabling. (Tr. 17, 23.)

After "careful consideration of the entire record," the ALJ determined that Arthur M. has the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) except he can occasionally balance, stoop, kneel crouch, crawl, and climb ramps and stairs" and "can never climb ladders, ropes, or scaffolds;" and is required to avoid hazards including working at unprotected heights or with moving machinery and exposure to extreme cold and vibration. (Tr. 21.) She further determined that he is capable of performing his past, skilled, relevant work as a burial-needs salesperson. (Tr. 28).

3

At the hearing, the VE testified to the ALJ's hypotheticals regarding a person of the same age, education, and work experience as Arthur M. who can perform light work with the same restrictions in his RFC. (Tr. 56.)  The VE testified that the hypothetical person would be able to actually and generally perform Arthur M.'s past work as a burial needs salesperson. (*Id.*)  When the ALJ further limited the hypothetical person, the VE testified that the person would not be able to perform Arthur M.'s past work. (Tr. 57.) However, the VE provided unskilled occupations available for a person with those limitations. (Tr. 57-58.)

Based on the hearing testimony and the medical evidence provided, the ALJ, after careful review of the record, determined that Arthur M. was not disabled under §§ 216(i) and 223(d) of the Social Security Act from his alleged onset date, May 1, 2022, to the date of her decision, April 25, 2024. (Tr. 15, 29.)  Because the ALJ found that Arthur M. was not disabled, he was not entitled to an award of DIB. (*See* Tr. 11-29).  On May 7, 2024, Arthur M. requested review of the ALJ's decision with the Appeals Counsel. (Tr. 1.)  His request was denied. (Tr. 1, 5.)  Subsequently, he filed this appeal of the Commissioner's final decision. (ECF 1.)

## II.    LEGAL STANDARDS[3]

A person is considered disabled, under the Social Security Act, when they have an "inability to engage in any substantial gainful activity by reason of any medically

---

[3] The respective regulations governing claims for DIB, which can be found at 20 C.F.R. Part 404, and claims for Supplemental Security Income, which can be found at 20 C.F.R. Part 416 "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same"

determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability, the claimant's mental and physical impairments are considered. 42 U.S.C. § 423(d)(2)(A). Those impairments must be so severe that the claimant not only cannot perform their past work but also cannot engage in any other substantially gainful work that exists in the national economy if they had applied for it. *See Id.*

When determining disability on the Commissioner's behalf, ALJs follow a five-step sequential process. *See* 20 C.F.R. § 404.1520. The ALJ reviews (1) the claimant's substantial gainful activity; (2) the medical severity of the claimant's impairments; (3) whether the claimant's impairments meet or medically equal an listed impairment; (4) the RFC in relation to the claimant's past relevant work; and (5) the claimant's RFC, age, education, and work experience and whether the claimant can adjust to other work or not. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof at steps one through four. *Smith v. Commissioner of Social Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). The burden switches to the Commissioner at the fifth step. *Id.* There, the Commissioner must show that jobs that the claimant can perform exist in significant numbers in the national economy. *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014).

---

for either class of benefits, the Court may consider case law developed under either provision in reaching a decision. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

The Social Security Act sets standards that ALJs must follow when preparing their written decisions. It requires ALJs to provide a statement of the case including discussion of evidence, their determination, and the reason or reasons for their decision. 42 U.S.C. § 405(b)(1). An ALJ may consider a range of factors when weighing medical opinions in making their decisions. *Zaborowski v. Commissioner of Social Sec.*, 115 F.4th 637, 638 (3d Cir. 2024). An ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Id.* at 639. Supportability and consistency are the only factors the ALJ must explain: "whether medical opinions were (1) based on 'objective medical evidence and supporting explanations' and (2) consistent with other medical opinions in the record." *Id.* (quoting 20 C.F.R. § 404.1520c(c)(1)) (citing 20 C.F.R. § 404.1520c(b)(2)). The ALJ does not need to reiterate the "magic words 'support' and 'consistent'" for each medical opinion assessed in the determination. *Zaborowski*, 115 F.4th at 639. ALJs "must always explain the reasons for their decisions. But that does not mean always explaining all the factors." *Id.* Ultimately, the ALJ is required only to explain dispositive reasons for their decision and need not explain everything they considered. *Id.* The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

It is not up to the Court to reweigh evidence or impose its own factual determinations on disability. *Chandler v. Commissioner of Social Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). The Court is not asked to determine whether Arthur M. is disabled. Rather, the Court is presented with a limited question when reviewing the ALJ's factual findings:

6

whether substantial evidence supports the Commissioner's decision. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *see also* 42 U.S.C. §405(g). Substantial evidence is not a high burden—it is more than a mere scintilla but less than a preponderance of the evidence. *Biestek v. Berryhill*, 587 U.S. 97 (2019) (citation omitted). It refers to "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* This Court must affirm the Commissioner's disability determination if it is supported by substantial evidence. *Zirnsak*, 777 F.3d at 610.

## III.    DISCUSSION

Arthur M. contends that the Commissioner's determination should be reversed because the ALJ failed to adequately consider and discuss evidence of the limitations resulting from his severe impairments.  (ECF 12 at 7.)  He also argues that the ALJ erred by relying on an opinion that state agency medical consultant Linda L. Myers M.D. prepared after she examined him three months prior to his right knee surgery, complaining that it "did not take into account any ongoing issues subsequent to surgery." (*Id.* at 8.)  The Commissioner responds that the ALJ made a reasonable determination that Arthur M. has the RFC to perform light work that is based on substantial evidence, citing her references to Arthur M.'s treatment records, his engagement in activities inconsistent with disabling allegations, and the state agency medical consultants' findings.  (*Id.* at 1-2.)

Upon review, substantial evidence supports the ALJ's decision.  She reviewed the record, took relevant evidence into consideration, and adequately articulated her decision.  Remand is not required as is further explained below.

A.     **The ALJ properly considered the evidence of Arthur M.'s limitations and adequately explained her determination.**

Arthur M. contends that the ALJ erred by failing to adequately consider evidence of his limitations or to discuss why she rejected that evidence.  (ECF 12 at 7.)  His brief sets forth an array of citations to his own testimony and selected medical records which he believes support his claim that he is disabled.  (*Id.* at 4-6.)  In his view, he presented "limitations on sitting and standing for any length of time without changing positions" that "would clearly prevent [him] from working . . . ." (*Id.* at 8.) The Commissioner responds that Arthur M. improperly asks, "the Court to reweigh the evidence and reach a different conclusion," which is something the Court cannot do. (ECF 13 at 6.) The Commissioner contends that the ALJ appropriately, "carefully review[ed] the record, delineat[ed] her findings with attention to the full record, and point[ed] to substantial evidentiary support for her findings." (*Id.* at 7.)  Courts defer to the ALJ's assessment of evidence so long as the ALJ "explain[s] what evidence he [or she] found not credible and why." *Zirnsak*, 777 F.3d at 612 (citation omitted).  A review of the ALJ's decision and the record shows that deference to the ALJ's assessment is appropriate here.

Arthur M. filed for DIB based on a combination of severe impairments: disorders of the spine, right knee disorders, and obesity. (Tr. 16.) The ALJ determined that those impairments do significantly limit Arthur M.'s ability to perform basic work activities— required by SSR 85-28. (*Id.*) She evaluated them in combination with his non-severe impairments when determining his RFC. (Tr. 17.)  When she did, she did not find that a combination of all of Arthur M.'s impairments met or medically equaled the severity of

8

a listed impairment in 20 C.F.R Part 404, Subpart P, Appendix 1, so Arthur M. did not meet his burden to show that he was *per se* disabled at Step Three.[4]  (Tr. 19.)  In a lengthy discussion, the ALJ then determined that Arthur M. had the RFC to perform light work subject to limitations at Step Four.  (Tr. 21-28.)

Arthur M. complains that his testimony and medical records make it "clear" that he "suffers from chronic pain that impacts his activities of daily living" and that it only can be "managed with medication."  (ECF 12 at 7-8.)  He argues that the information in his medical records "is consistent with [his] testimony that he cannot sit or stand for any length of time without having to get up and change positions."  (*Id.* at 8.)  He maintains that "it was error for the [ALJ] to disregard [this] evidence without explanation when [his] limitations on sitting and standing for any length of time would clearly prevent [him] from working as documented by the" VE.  (*Id.*)

To the extent that Arthur M. faults the ALJ for failing to sufficiently consider his testimony (*see* ECF 12 at 4-5), the ALJ was not required to simply accept what he said without question.  *See* 20 C.F.R. § 404.1529(c)(4) ("Your symptoms . . . will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.").  "Although any statements of the individual concerning his or her symptoms must be

---

[4] 20 C.F.R Part 404, Subpart P, Appendix 1 provides an extensive list of impairments determined to have disabling findings on those claiming benefits under the Social Security Act. This list is based on a sole consideration of medical criteria without consideration of vocational criteria.

carefully considered, the ALJ is not required to credit them." *Chandler*, 667 F.3d at 363 (citation modified).  Her lengthy decision, supported by citations to evidence, shows that she weighed Arthur M.'s testimony and subjective symptom reports in the context of the entire record. (*See* Tr. 22.) She considered Arthur B's hearing testimony as to the symptoms that he claimed made him unable to work. (Tr. 22 (citing Tr. 46-55.).) She considered function reports that showed he was able to perform daily tasks around his home for his family, regularly go to a friend's house, and wore unprescribed back and knee braces. (Tr. 22, 23 (citing Tr. 218, 219, 220, 258, 261.).) She also reviewed a third-party function report from his wife that said he supervised their child, engaged in homemaking tasks without encouragement, and had hobbies including hunting, fishing, and fixing broken items.  (Tr. 23 (citing Tr. 240, 241, 243.).)  Arthur M. and his wife also both stated that he was involved in their church by attending every Sunday, planning Sunday school, and leading song. (*Id.* (citing Tr. 221, 243, 270.).) "Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make." *Malloy v. Comm'r Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009). Ultimately the ALJ found that Arthur M.'s "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 23.)

In making this assessment, the ALJ carefully considered the medical records and, contrary to Arthur M.'s argument, adequately explained that the limitations related to his impairments did not make him disabled. The record reflects that Arthur M. did have symptoms of pain that correlated to injuries that eventually required surgery. (Tr. 23

10

(citing Tr. 344, 410, 515, 565, 572.).) However, the ALJ's substantial discussion of her findings also referenced multiple reports in the record reflecting that his pain was being controlled or managed without side effects.  (Tr. 23-26 (citing Tr. 313, 319, 324, 336, 510, 554, 557, 600.).)  She cited multiple reports where Arthur M.'s exams were described to be within normal limits despite his presenting symptoms.  (*Id.* (citing Tr. 315, 323, 324, 495, 551, 552, 576, 577, 592, 593, 604.).)  She also referenced reports that included observations and reports of physical improvement.  (*Id.* (citing Tr. 463, 475, 514, 552, 553, 554, 557, 558, 560, 561, 563.).)  Citing multiple reports from Arthur M.'s medical visits, the ALJ explained that there was evidence to show that Arthur M.'s symptoms were not as intense, persistent, or limiting as he claims they were.  (Tr. 23.)

Ultimately, the ALJ made reasonable conclusions regarding Arthur M.'s subjective testimony after she appropriately weighed the medical evidence. "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy*, 306 F. App'x at 764; *see also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (holding that an "ALJ is entitled to weigh all evidence in making its finding," even where there is record evidence "suggesting a contrary conclusion"). The Court may "not substitute [its] own judgment for that of the fact finder" as substantial evidence exists to support the ALJ's decision regarding Arthur M.'s RFC.  *Zirnsak*, 777 F.3d at 611.

11

### B.    The ALJ appropriately considered the medical opinions of record, including Dr. Meyers' report.

Arthur M. also contends that the ALJ was wrong to rely on Dr. Myers' opinion since her examination of him occurred before his knee surgery.  (ECF 12 at 8.)  He claims her opinion failed to account for his ongoing symptoms and issues after his surgery that had an impact on his physical capabilities. (*Id.*) As a result, he complains that the ALJ failed to explain her reasons for "discounting the findings" of his treating providers and accepting Dr. Myers' opinion instead. (*Id.*) The Commissioner responds that "the ALJ properly assessed the medical source opinions . . . ."  (ECF 13 at 7.)  A review of the ALJ's consideration of the medical opinions in the record reveals no error that would require remand.

When an ALJ determines a claimant's RFC, they must consider all the evidence that is provided to them. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Their decision may credit or discredit the medical opinions in the record in whole or part based on the ALJ's interpretation of the evidence.  *See Chandler*, 667 F.3d at 361–62.  Under the applicable regulations for claims filed after March 27, 2017, the ALJ was not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Arthur M.'s] medical sources." 20 C.F.R. § 404.1520c(a); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025). An ALJ is not required to adopt "all of" a medical opinion solely because the ALJ finds the opinion "as a whole persuasive." *Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014). Along

12

with medical opinions, the ALJ must also weigh the other medical and non-medical evidence provided. *See Burnett v. Social Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). When an alleged limitation is "supported by medical evidence, but is opposed by other evidence in the record," the ALJ may choose to discredit it. *Zirnsak*, 777 F.3d at 615.

The ALJ appropriately explained in her decision that she could not defer or give any specific evidentiary weight to any prior administrative medical findings. (Tr. 26.) She found Dr. Myers' opinion "to be generally persuasive." (Tr. 27.) Dr. Myers found that Arthur M. "could perform light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling and *avoidance of* concentrated exposure to extreme cold, vibration, and hazards (machinery, heights, etc.). (Tr. 26 (emphasis added) (citing Tr. 70-77).) The ALJ explained that Dr. Myers' opinion was prepared on May 16, 2023, and acknowledged that date was before Arthur M.'s August 2023 knee surgery. (Tr. 26-27 (citing Tr. 572-75.).) Despite the timing, the ALJ found Dr. Myers' opinion was generally persuasive because it cites Arthur M.'s history of pain medication use, chronic pain management, and chiropractic care before his surgery. (*Id.* (citing Tr. 72-75).) Dr. Myers' opinion showed that, before surgery, Arthur M.'s daily activities were moderately limited by pain. (Tr. 76.) In weighing Dr. Meyers' opinion, the ALJ explained that except for the August 2023 knee surgery, Arthur M.'s treatment ha[d] been routine and conservative with physical therapy and chiropractic care." (Tr. 27.)

Dr. Myers' opinion was "generally persuasive" because, in the ALJ's view, medical evidence did not support Arthur M.'s characterization of his pain and symptoms' frequency, duration, location, and intensity. (*Id.*) The ALJ explained that Dr. Meyers'

13

opinion was generally consistent with other evidence but was "not consistent with" evidence that showed that Arthur M. was, in fact, "slightly *more* limited" with respect to climbing ladders, scaffolds, or ropes than Dr. Myers had opined.  (*Id.* (emphasis added) (citing Tr. 77.))  For that reason, the ALJ's RFC determination provides that Arthur M. "*can never* climb ladders, ropes or scaffolds." (Tr. 21 (emphasis added).)  Ironically, Arthur M. challenges the ALJ's decision to discount an opinion that would have supported an RFC determination that was even *less favorable* to him than the determination she ultimately made.

Moreover, to reach her RFC determination, the ALJ did not only consider Dr. Myers' opinion.  She considered evidence from provider visits made both before and after Arthur M.'s August 2023 surgery.  (Tr. 23-27.)  Before the surgery, the doctors who treated Arthur M. consistently found that his pain was controlled by medications which were improving his quality of life and he was generally within normal physical limits.  (Tr. 23-24 (citing Tr. 313, 319, 324, 336.).)  From his May 2022 arthrocentesis to his right knee diagnosing his meniscus tear until March 2023, records show that his condition improved from 75 to 100 percent. (Tr. 23 (citing Tr. 463, 475.).) After his surgery, Arthur M.'s treating physicians reported that he was improving and his knee was "a lot better." (Tr. 25 (citing Tr. 554, 559, 563, 564.).)  His mobility was improving, which allowed him to get back to daily activities and was observed by his improved gait without crutches.  (*Id.* (citing Tr. 560.).)  Arthur M. even mentioned to his physical therapist that he was close to returning to his status before he had the surgery. (*Id.* (citing Tr. 554.).) The ALJ used all of this

14

evidence when determining Arthur M.'s RFC finding that he can perform light work with some limitations.  (Tr. 26.)

Arthur M. argues that the ALJ "failed to adequately consider the evidence pertaining to [his] issues regarding his ability to sit, stand, and walk for any length of time without changing positions when conducting the [RFC] analysis." (ECF 12 at 8.) Ultimately, however, the ALJ properly relied on Dr. Myers' opinion and all the other medical evidence in the record in determining his RFC. The court defers to her assessment because she sufficiently "explain[ed] what evidence [she] found not credible and why [she] found it not credible." *Zirnsak*, 777 F.3d at 612.

## IV.    CONCLUSION

Upon review, substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate"—exists in the record to support the ALJ's decision that Arthur M. is not disabled.  *Biestek*, 587 U.S. at 103.  Therefore, remand is not required.  Arthur M.'s request for review is **DENIED** and the Commissioner's decision is **AFFIRMED**.

An appropriate Order follows.